# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,   *

Plaintiff   *

v.   *   Civil Action No. ELH-18-2395

DEYANA CORCORAN, *et al.*,   *

Defendants   *

\*\*\*

## MEMORANDUM OPINION

Self-represented plaintiff Donald R. Pevia, an inmate currently confined at the North Branch Correctional Institution ("NBCI"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that his rights to Equal Protection and Due Process were violated by defendants when he was prevented from attending classes in order to obtain his general education diploma ("GED"). ECF 1.[1] He also filed a supplement to his Complaint. ECF 5.

Defendants, Governor Larry Hogan, Former Commissioner Deyana Corcoran, Warden Frank Bishop, Lieutenant Vaughn Whiteman, and Correctional Officer II Amy Conner, have moved to dismiss or, in the alternative, for summary judgment. ECF 14. The motion is supported by a memorandum (ECF 14-1) (collectively, the "Motion") and exhibits. Plaintiff opposes the motion. ECF 16.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

---

[1] Citations are to the court's electronic docket.

## I. Background

NBCI is organized by unit management. The institution is divided into smaller units, which then operate as small institutions within the larger whole. ECF 16-1 at 12. NBCI consists of four units; housing units 1 and 2 are defined as special management units, which provide a closer level of monitoring due to security reasons. *Id.* Inmates assigned to Housing Unit 2 are designated as either Maximum II,[2] a member of the special needs unit, or are inmates from the general population who are recent transfers and/or recent disciplinary segregation transfers. ECF 14-3 (Whiteman Decl.),¶ 4.

Inmates who are placed on Housing Unit 2 for disciplinary segregation, such as plaintiff, must remain adjustment free for six months before being able to transfer to Housing Unit 3. Those inmates who transfer into NBCI must remain on Housing Unit 2 for one year before being able to transfer to Housing Unit 3. *Id.*, ¶ 5. The parties agree that, other than the special needs inmates

---

[2] In *Pevia v. Bishop,* Civil Action No. ELH-17-2798, a case concerning plaintiff's access to religious programming while housed in Housing Unit 2 at NBCI, I said, ECF 24 at 2 (quoting ECF 13-8, Facility Directive DC 100.0004(4)(a) at 2):

> From December 5, 2014 to October 19, 2016, plaintiff was classified as a Maximum Security Level II-Structured Housing inmate (MAX II-SH). ECF 13-7 (Decl. of NBCI Chaplain Kevin Lamp), ¶ 8. Facility Directive DOC 100.0004.04 defines a MAX-II SH inmate as an individual:
>
> (i) Sentenced to the custody of the Commissioner of Correction (Commissioner);
>
> (ii) Who demonstrates or is known to demonstrate dangerous, violent, or other characteristics that pose a serious threat to life, property, self, staff, other inmates, or facility security;
>
> (iii) Is determined to require enhanced supervision in order to remediate dangerous, violent, or other characteristics that pose a serious threat to life, property, self, other inmates, or facility security; and
>
> (iv) If housed in general population poses a serious threat to life, property, self, staff, other inmates, or facility security.

confined to Housing Unit 2, inmates confined in Housing Unit 2 are not permitted to attend school. ECF 1 at 4; ECF 14-2 at 8; ECF 14-3, ¶ 3.

Plaintiff alleges that in 2016, while incarcerated at NBCI, he attempted to sign up for classes to obtain his GED but was advised by the principal that "only inmates from Housing Unit[s] #3 and 4 were permitted schooling." ECF 1 at 3. Before plaintiff could explore the matter further he was placed on disciplinary segregation. After plaintiff's release from disciplinary segregation he again inquired about obtaining his GED and was advised that an unspecified Maryland regulation prohibited him from attending school. *Id*. Plaintiff did not pursue the issue. *Id*.

On November 3, 2017, plaintiff was transferred to Western Correctional Institution ("WCI") where he immediately requested to obtain his GED. ECF 1 at 3. Plaintiff took a placement test and began classes on January 2, 2018. *Id*.

On January 23, 2018, plaintiff was returned to NBCI, Housing Unit 2. ECF 1 at 3. While assigned to general population on Housing Unit 2 he was convicted of a rule infraction in June of 2018. ECF 14-3,¶ 6. He was found guilty of another rule infraction in October of 2018. As such, his ability to transfer to Housing Unit 3 was reset to March of 2019. *Id*.

Defendants offer that plaintiff has completed his mandatory education requirement. ECF 14-2 at 9. Nevertheless, plaintiff indicates that he may continue in the education program beyond 120 days at the case manager's discretion. ECF 16-1 at 1. Plaintiff has been placed on the list for school programs once he is transferred to Housing Unit 3. ECF 14-3, ¶ 7.

Plaintiff filed an administrative remedy procedure ("ARP") regarding the denial of his access to school. ECF 1 at 4. He alleges that Whiteman and Conner attempted to have him sign off on the grievance. *Id*. In a Supplemental Complaint, plaintiff states that he notified Governor Hogan of the disparate treatment regarding educational opportunities but Hogan failed to change

3

the policy that denied those housed on Housing Unit 2 access to education. ECF 5 at 2.

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).

4

This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Generally, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v.*

*Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nomoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not sought discovery. And, I am satisfied that it is appropriate to address defendant's motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625,

628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"

8

*Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

Plaintiff alleges that his right to Equal Protection under the 14th Amendment was denied by the acts of defendants. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). Differential treatment alone does not state an equal protection claim without a showing that the inmate was similarly situated to those treated differently. *See Moss v. Clark,* 886 F.2d 686, 691 (4th Cir. 1989).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To survive a motion for summary judgment, plaintiff must provide specific, non-conclusory allegations that demonstrate an improper motivation. *Williams v. Hansen*, 326 F. 3d 569, 584 (4th Cir. 2003). Once plaintiff has made this showing, the court then determines whether the disparate treatment can be justified. *See e.g. City of Cleburne*, 473 U.S. at 439-40.

Because of the special considerations regarding the running of penal institutions and the limitation of many privileges and rights of prisoners due to their incarceration, a "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Morrison* 239 F.3d at 654-55 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))(other citations omitted). In short, the policies in place must meet a test of reasonableness. *Turner*, 482 U.S. at .

Plaintiff's claim that he was treated differently than other inmates is without support. No general population inmate assigned to Housing Unit 2 was permitted to attend educational programming. Additionally, plaintiff has failed to put forth any evidence of discriminatory intent. Housing Unit 2 houses inmates who require additional supervision based on a variety of stated reasons. It has been determined by correctional staff that those inmates may not receive the privilege of attending educational programming. There is no evidence that defendants acted intentionally or purposefully in order to discriminate against plaintiff.

I need not consider whether the policies in place regarding the availability of educational programming for inmates housed in Housing Unit 2 are reasonable, as plaintiff has failed to demonstrate that he was intentionally treated differently than other similarly situated inmates or that the acts of defendants were intentional or discriminatory.

To the extent plaintiff raises a due process claim, his claim likewise fails. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally insufficient. Thus, plaintiff must first demonstrate that he had a protected liberty interest.

"[C]onfinement to prison does not strip a prisoner of all liberty interests." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). To determine whether an inmate retains a certain liberty interest, the court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979)(quoting *Board of Regents v. Roth*, 408 U.S. at 577).

The Fourth Circuit has determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." *Gaston*, 946 F.2d at 343. Such interests, however, are generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to Due Process Clause protections, nevertheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995)(citations omitted).

To the extent plaintiff alleges a liberty interest in participating in educational programs during his imprisonment, plaintiff's claim is without merit. Inmates have no constitutional right to educational opportunities while incarcerated. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (no Eighth Amendment right to classes); *Women Prisoners of District of Columbia Dept. of Corr. v. District of Columbia*, 93 F.3d 910, 927 (D.C. Cir. 1996) (inmates do not have a constitutional right to education opportunities); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (finding no constitutional right to basic educational or vocational training programs); *Hernandez v. Johnson*, 833 F.2d 1316 (9th Cir. 1987) (no due process right to attend classes); *Rivera v. Byars*, 2013 WL 4695637, * 5 (D.S.C. August 30, 2013) ("The law is well settled . . . that an inmate has no constitutional right to participate in an educational or rehabilitative program."); *Quarles v. Dillman*, 2011 WL 1869961, * 2 (W.D. Va. May 16, 2011)("[I]nmates have no constitutional right to job or educational opportunities while incarcerated."); *Gholson v. Murry*, 953 F. Supp. 709, 716 (E.D. Va. 1997) (finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life).

Indeed, a prison sentence necessarily results in the loss of certain privileges. *See Gaston*,

946 F.2d at 343 (concluding that to safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); *Hatch v. District of Columbia*, 184 F.3d. 846, 855 (D.C. Cir. 1999) (stating that "'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence'") (citation omitted). Therefore, defendants are entitled to summary judgment in their favor.[3]

An Order follows.

<u>August 9, 2019</u>                  <u>   /s/   </u>
Date                         Ellen L. Hollander
                          United States District Judge

---

[3] The court need not address defendants' immunity defenses.